THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* VERNON DARNELL HICKS, Defendant-Appellant.

Fourth District    No. 16674

Opinion filed October 29, 1981.

240

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

J. William Roberts, State's Attorney, of Springfield (Robert J. Biderman and James K. Horstman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

In a jury trial, defendant Vernon Hicks was convicted of murder, attempted murder, home invasion and armed robbery. The trial court sentenced defendant to 40 years' imprisonment for murder and to a consecutive sentence of 30 years for attempted murder. The court also imposed a concurrent term of 30 years' imprisonment on the armed robbery conviction. The defendant now appeals his convictions and the sentences imposed.

At trial, the State's chief witness was Kathryn Yazell. Yazell was living with Francis Cody on September 24, 1979. The two of them frequently sold marijuana to other individuals. Through such sales, Yazell and Cody came into contact with Richmond Russell, a frequent customer. Yazell and Cody would give him marijuana, and he would give them money after he subsequently sold the marijuana. At about 3 a.m. on September 24, 1979, Russell came to Cody's home. Cody and Yazell were sleeping when Russell knocked on the door. Cody went to answer the door, but Yazell stayed in bed.

Yazell testified that the next thing she knew, a man began tying her up. She saw two other men—Russell and the defendant Hicks—standing on each side of Cody. All the men were armed with weapons. After she and Cody were tied up, they were placed in the living room. Yazell testified that from her vantage point, she could see two of them search the bedroom while the defendant guarded them. They discovered a safe but could not open it. They dragged Cody back into the bedroom, extracted the combination to the safe from him, and brought him back into the living room.

After they opened the safe, the two men placed the contents of the safe in one of Yazell's handbags. The safe had contained a ledger, a checkbook and "several thousand" dollars. At trial, Yazell could not recite an exact figure and denied giving the police an exact figure. Before the defendant and his accomplices left the home, they covered the windows with blankets and turned the volume of the stereo up loudly. Yazell testified that as she and Cody were lying on the floor, against a wall, the

defendant shot her in the face and neck and shot Cody twice. Cody died from his wounds.

Yazell identified her assailants—including the defendant—from two separate sets of photographs shown to her while she was in the hospital on September 25 and September 26. She also identified the defendant at trial as the man who shot her and Cody. When the police found and arrested the defendant six months later, he admitted that he accompanied Russell and another man (who proved to be Russell's brother) to the Cody home. He also admitted that he carried a weapon, which was shown to be of the same type that shot Yazell and Cody, on that evening.

The first issue on appeal is whether the State proved the defendant guilty beyond a reasonable doubt. The defendant claims that the testimony of Yazell was confusing, inconsistent and incredible. The defendant points to inconsistencies between Yazell's direct examination testimony and her cross-examination testimony, on the questions of how long she had used marijuana and when she stopped using drugs. The defendant also claims that Yazell's testimony in court concerning how much money was in the safe is inconsistent with prior statements made to police on that matter. Yazell denied ever making those inconsistent statements. Finally, the defendant argues that Yazell's identification of the defendant and her testimony are incredible, because, while in the hospital, she wrote down the name "Richie" in response to a question about who shot her.

It is settled that "[a] reviewing court may not substitute its judgment for that of the trier of fact 'on questions involving the weight of the evidence or the credibility of the witnesses, and we will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt.' " (*People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) Yazell's inconsistencies regarding her drug use are merely collateral to the primary questions concerning the guilt of the defendant. Moreover, her alleged inconsistent statements concerning the precise amount of money in the safe are also collateral to the principal issues. Even if that issue was of some importance, the fact that the jury may have chosen to believe her over the police officers is not sufficient reason to reverse the jury's verdict.

Finally, although superficially damaging to Yazell's identification of the defendant, her statement that "Richie" shot her does not render her testimony incredible. On the same day Yazell was shot, as she was in a hospital bed in critical condition from gunshot wounds to the head and neck, her brother asked her if she knew who shot her. She wrote down "Richie." Yazell later told detectives that she was merely trying to convey that Russell was involved in the shooting, not that he actually did the shooting. Considering her condition at the time, and the fact that Russell

was the only assailant that she knew by name, her statement and explanation are not so inconsistent with her identification testimony as to render the latter incredible as a matter of law. The fact that the jury chose to believe her should not be disturbed.

The defendant also appeals his conviction for armed robbery, alleging that the State failed to prove that the defendant removed any currency from Cody's presence. Yazell testified that the men opened the safe, that "thousands of dollars" were in the safe, that the men took things out of the safe and placed them in a handbag, and that, later, the police informed her that the safe was empty when they opened it. The jury could reasonably infer that the defendant and his accomplices took money from Cody's presence.

■■ The defendant also claims that he was denied his right to a fair trial because the trial court admitted prejudicial photographs into evidence. These photographs depicted Cody's body and uncleaned gunshot wounds. The defendant characterizes the photos as unnecessarily gruesome and asserts that their prejudicial effect outweighed their probative value.

The trial court has discretion to admit photographs in a criminal prosecution. The court should balance the probative value of the photos against their prejudicial effect. The decision of the trial court will not be reversed absent an abuse of discretion. (*People v. Greer* (1980), 79 Ill. 2d 103, 117, 402 N.E.2d 203.) Trial courts have discretion to admit a photograph if it is probative, even if the photo is also gruesome. (*People v. Lindgren* (1980), 79 Ill. 2d 129, 143, 402 N.E.2d 238.) In the case at bar, the photographs corroborated and aided the testimony of the pathologist. Therefore, the trial court did not abuse its discretion in the admission of the photographs into evidence. See also *People v. Blackwell* (1979), 76 Ill. App. 3d 371, 381, 394 N.E.2d 1329 (photos not unnecessarily cumulative merely because of oral testimony on same issue).

The defendant's fourth contention on appeal is that he was denied a fair trial due to allegedly improper comments from the prosecutor. The prosecutor, in closing argument, stated, "[The criminal code] protects everyone, and if a guilty conviction on all counts is not returned, then we may as well throw the code right out the window." The defendant contends that this comment was an improper expression of personal opinion, implying the evidence was so clear that only one conclusion was possible.

■■ ■ The prosecutor is entitled to argue his case to the jury, and is entitled to argue the evidence and reasonable inferences from that evidence. (*People v. Hairston* (1970), 46 Ill. 2d 348, 375, 263 N.E.2d 840, cert. denied (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658.) Moreover, it is certainly proper for the prosecutor to argue that he has proved his case to the jury. (*People v. Bost* (1980), 80 Ill. App. 3d 933, 955,

400 N.E.2d 734.) Therefore, we find no error or unfair prejudice in the prosecutor's remark.

■■■ The defendant also claims that the prosecutor's characterization of defense counsel's arguments as "red herrings" constituted an improper personal attack upon the defense counsel. As we see it, the prosecutor merely argued that the defense counsel's points were not relevant to the determination of guilt or innocence. There is nothing improper in suggesting that the opponents' arguments are immaterial or irrelevant. See *People v. Galloway* (1979), 74 Ill. App. 3d 624, 393 N.E.2d 608.

■■ The defendant also contends that it was improper and prejudicial for the prosecutor, in rebuttal argument, to compare the juror's task to the television game show "Concentration." The defendant claims that this comparison detracted from the seriousness of a criminal trial. The prosecutor, however, stressed the importance of the juror's task, and emphasized his burden of proof. Furthermore, the prosecutor delivered this comment in response to defense counsel's analogy to a jigsaw puzzle. The defense counsel invited a response to counter his own analogy, and cannot now complain that the response may have been improper.

■■ The defendant also claims it was improper and misleading for the prosecutor to state that the holsters and ammunition found in Russell's apartment were "just as good as the murder weapon" to implicate the defendant in the murder and robbery. It is true, as defendant argues, that the weapon itself would be more probative. However, the prosecutor is still entitled to argue, as he did here, the evidence and legitimate inferences from it. *People v. Hairston* (1970), 46 Ill. 2d 348, 375, 263 N.E.2d 840.

As a fifth issue on appeal, the defendant contends that it was reversible error for the trial court to instruct the jury not to consider the fact that the defendant did not testify. The State tendered Illinois Pattern Jury Instruction, Criminal, No. 2.04 (1968). This instruction states: "The fact that [a] [the] defendant[s] did not testify should not be considered by you in any way in arriving at your verdict." The trial court gave this instruction over defendant's explicit objection.

The trial court committed error in giving this instruction over defendant's objection. This court has ruled that this instruction may have the effect of calling attention to the fact that the defendant did not testify and thus prejudicing his case. (*People v. Lee* (1976), 44 Ill. App. 3d 43, 45, 357 N.E.2d 888.) Therefore, it is the defendant who must be allowed to choose whether the instruction will be used.

■■ This does not necessarily mean, however, that the defendant's conviction must be reversed. A criminal conviction will be reversed for improper jury instructions when the error is prejudicial to the defendant. (*People v. Stewart* (1970), 46 Ill. 2d 125, 128, 262 N.E.2d 911.) In the case

at bar the defendant moved for a directed verdict after the State presented its case. The defendant rested immediately after the court denied his motion. The impact on the jury, of the defendant not presenting any evidence, could not have been lost. In this context, the instruction to the jury regarding his silence is harmless error, if not in fact beneficial to him. This determination is reinforced by the strong and overwhelming evidence of the defendant's guilt. *People v. Stewart* (1970), 46 Ill. 2d 125, 128, 262 N.E.2d 911.

■■ ■ Finally, the defendant contends that the trial court committed error in sentencing him. The State concedes that the trial court erroneously considered participation in the proceeds of the crime as receiving compensation for the crime. The trial court specifically stated that a factor in aggravation which the court was considering was that "the defendant received compensation for committing the offense of armed robbery." The trial court considered such compensation as a factor in aggravation of the crime under section 5—5—3.2(a)(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(a)(1)). Although such a determination was incorrect (*People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906), the events here, the lack of any mitigating factors and the defendant's prior criminal history amply support the robbery sentence and the murder and attempted murder sentences imposed upon him.

For the foregoing reasons, the convictions in the Circuit Court of Sangamon County and the subsequent sentences are affirmed.

Affirmed.

STOUDER and HEIPLE, JJ., concur.