THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CURTIS JOHNSON, Defendant-Appellant.

First District (5th Division) No. 86—0329

Opinion filed August 21, 1987.—Rehearing denied September 17, 1987.

Steven Clark and Thomas Long, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Assistant State's Attorney, of counsel), for the People.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Following a jury trial defendant was found guilty of one count of murder and three counts of armed robbery and was sentenced to serve concurrent terms of 60 years for murder and 30 years for armed robbery. On appeal, his court-appointed counsel[1] contends that

---

[1] The issues advanced by defendant in a supplemental *pro se* brief are discussed later in this opinion.

the cause must be remanded for a hearing under *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, to determine whether the prosecutor used his peremptory challenges to exclude blacks from the jury merely because of their race; that defendant was denied his sixth amendment right to a jury drawn from a representative cross-section of the community; that defendant was not proved guilty beyond a reasonable doubt; that the prosecutors made improper and inflammatory arguments; and that the sentences are excessive.

Robert Hampton and Wilbert Shipp testified that shortly after 9:30 a.m. on September 3, 1984, they were helping Shipp's stepson, Danny Turner, and their friend, Dan Williams, pull Hampton's van out of his garage at 7009 South Lowe in Chicago to make room for Williams' automobile when defendant entered the garage holding a .38 Smith & Wesson bluesteel revolver and announced a robbery. Defendant ordered the men to lie on the floor and empty their pockets. Hampton and Shipp complied and placed their money on the floor of the garage in front of them. Williams, however, threw his change on the floor. Angered by this action, defendant ordered Williams to remove his wallet. Williams took his wallet out of his pants and threw it toward defendant, who said, "Son of a bitch, you thinking I'm playing with you, don't you. I'm not playing with you. You get up and walk out that back door." Defendant walked with Williams to the rear door of the garage and shot him once in the back of the head, killing him instantly. Defendant then collected the money that had been placed on the floor and fled.

Hampton estimated that the robbery took only a few minutes; Shipp thought they were on the floor for 15 to 20 minutes. Both testified that they saw defendant while they were standing in the garage and that they continued to look at him and his gun after he ordered them to lie on the floor. The garage was illuminated by natural and artificial light. Hampton and Shipp gave a detailed description of the offender and his clothing to the police. Approximately 10 days after the incident, Hampton and Shipp selected defendant's photograph from an array of 15 photographs and thereafter identified defendant in separate lineups. Danny Turner, who was not able to make a positive identification of defendant, did not testify.

Upon his arrest, defendant denied that he was the offender and told the police that he had left his apartment at 6632 South Lowe between 9 and 10 a.m. on September 3, 1984, and walked to a home for the elderly at 65th and Lowe to cut hair. His customer was not home and defendant delivered some brake shoes to an address on South Halsted. He cut hair later in the afternoon until 2 or 3 p.m. After he

was identified in the lineups, defendant gave another statement to the police and an assistant State's Attorney in which he said that he was at home with his mother and her friend, Willie Williams, until 11 a.m. on September 3, 1984, when he left to cut hair.

The police searched the apartment of Ella Johnson, defendant's common law wife, at 2309 East 79th Street, between 10 and 11 p.m. on September 14, 1984; defendant refused to allow the police to search his apartment until after he called his sister from the police station. No evidence connecting defendant with the crimes was found at either address.

Defendant presented an alibi defense, which was corroborated by his mother and Willie Williams. Another witness, Willie Woodridge, testified regarding defendant's whereabouts several hours after the shooting.

OPINION

I

Defendant initially contends that this case must be remanded for a hearing under *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, to determine whether the prosecutor used his peremptory challenges to exclude blacks from the jury merely because of their race. We agree.

■ In *Batson*, the Supreme Court held that prosecutors may not purposefully discriminate against a racial group in selecting a petit jury in a trial of a defendant belonging to that group. To establish a *prima facie* case of discrimination, a defendant must demonstrate that he is a member of a recognizable group and that the prosecutor used peremptory challenges to remove members of his race from the jury panel. The defendant must then show that the relevant facts and circumstances of the case raise an inference of discrimination. After this *prima facie* case is made, the State has the burden of putting forward a neutral explanation for its challenges. The circuit court must then determine whether the defendant has proved purposeful discrimination. (476 U.S. 79, 98, 90 L. Ed. 2d 69, 88-89, 106 S. Ct. 1712, 1723-24.) *Batson* applies to all cases pending on direct review at the time it was decided. *Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708.

In the case at bar, the record discloses that after two panels of jurors were selected and sworn, and the State had tendered the final panel to the defense, defense counsel objected and argued that the prosecutor had used six of nine peremptory challenges to excuse six

of the seven black veniremen who had been questioned up to that point. The court overruled this objection, noting that the prosecutor had accepted one black man on the first panel. Defendant's motion for a new trial alleged that the prosecutor had used 8 of his 11 peremptory challenges against black veniremen. On the basis of this record, defendant argues that he is entitled to a *Batson* hearing. The State responds that defendant has waived this issue by not establishing the racial composition of the final jury and that defendant failed to make the *prima facie* showing required by *Batson*. We disagree.

■ Although the record does not reflect the exact racial composition of the jury actually chosen, it appears that, at most, two black jurors were accepted by the State, which used its peremptory challenges to excuse eight other black veniremen. *Batson*, however, does not require complete exclusion of a racial group to prove discrimination. (*People v. Seals* (1987), 153 Ill. App. 3d 417, 422-23, 505 N.E.2d 1107, 1111 (*Batson* hearing required where prosecutors used 6 of 10 peremptory challenges against blacks even though one black served on the jury).) Otherwise, as the court noted in *Fleming v. Kemp* (11th Cir. 1986), 794 F.2d 1478, 1483, prosecutors could allow one or two black jurors to serve on the jury to immunize their other challenges.

A *prima facie* case of discrimination has been found to exist where the State used all seven of its peremptory challenges against blacks, even though three blacks served on the jury (*People v. Kindelan* (1986), 150 Ill. App. 3d 818, 502 N.E.2d 422) and where the State used seven of its eight peremptory challenges against blacks to produce a jury which included only two blacks (*People v. Johnson* (1986), 148 Ill. App. 3d 163, 498 N.E.2d 816).

■ We need not decide whether defendant has established a *prima facie* case of racial discrimination. Defendant was tried before *Batson* was decided. On May 1, 1987, the Illinois Supreme Court remanded a series of pre-*Batson* cases for hearings pursuant to that decision. Specially concurring with these supervisory orders, Justice Ryan stated that it would be "manifestly unfair" to evaluate a defendant's claim of discriminatory use of peremptory challenges by the State on a record made before the requirements of *Batson* were established. According to Justice Ryan, with whom Justices Ward and Moran concurred, a defendant is entitled to return to the trial court and attempt to establish a *prima facie* case of discrimination in every case in which the *Batson* issue is "viable." *People v. Hooper* (1987), 118 Ill. 2d 244, 506 N.E.2d 1305.

We are in agreement therewith and, on the basis of the record before us, believe that this case should be remanded for a *Batson* hearing.

## II

■ Relying primarily on *Taylor v. Louisiana* (1975), 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692, defendant next contends that he was denied his sixth amendment right to a jury drawn from a representative cross-section of the community by the prosecutor's use of his peremptory challenges. We disagree.

In *Taylor*, the Supreme Court held that the selection of a petit jury from a representative cross-section of the community is an essential component of the sixth amendment right to a jury trial which is violated by the systematic exclusion of women from the venires, panels or lists from which petit jurors are drawn. In so ruling, however, the Court cautioned that "we impose no requirement that petit jurors actually chosen must mirror the community and reflect the various distinctive groups in the population." (419 U.S. 522, 538, 42 L. Ed. 2d 690, 703, 95 S. Ct. 692, 702.) "Defendants," the court held, "are not entitled to a jury of any particular composition." 419 U.S. 522, 538, 42 L. Ed. 2d 690, 703, 95 S. Ct. 692, 702.

Defendant ignores this clear warning by refusing to acknowledge the crucial distinction between exclusion from the jury venire and exclusion from the petit jury actually chosen. That error is fatal to his argument.

In *Lockhart v. McCree* (1986), 476 U.S. 162, 90 L. Ed. 2d 137, 106 S. Ct. 1758, the defendant challenged the removal for cause, prior to the guilt phase of his bifurcated capital trial, of prospective jurors whose opposition to the death penalty was so strong that it would prevent or substantially impair performance of their duties as jurors at the sentencing phase of trial. Defendant claimed that this practice denied his sixth amendment right to a jury drawn from a fair cross-section of the community.

In rejecting this argument, the Supreme Court noted that it had "never invoked the fair cross-section principle to invalidate the use of either for-cause or peremptory challenges to prospective jurors, or to require petit juries, as opposed to jury panels or venires, to reflect the composition of the community at large." (476 U.S. 162, 173, 90 L. Ed. 2d 137, 147-48, 106 S. Ct. 1758, 1764.) The court explained that "[t]he limited scope of the fair cross-section requirement is a direct and inevitable consequence of the practical impossibility of providing each criminal defendant with a truly 'representative' petit jury." (476 U.S. 162, 173-74, 90 L. Ed. 2d 137, 148, 106 S. Ct. 1758, 1765.) The court concluded that "an extension of the fair cross-section requirement to petit juries would be unworkable and unsound" and declined defendant's "invitation to adopt such an extension." 476 U.S. 162, 174, 90

L. Ed. 2d 137, 148, 106 S. Ct. 1758, 1765.

In our judgment, the opinion in *Lockhart* is dispositive of defendant's argument that the prosecutor's use of peremptory challenges to exclude eight black veniremen from the jury deprived him of his sixth amendment right to a jury drawn from a fair cross-section of the community. That right extends only to venires from which the petit jurors are drawn but not to the juries actually chosen. See *People v. Johnson* (1986), 150 Ill. App. 3d 1075, 1085, 502 N.E.2d 304 (and the cases cited therein).[2]

## III

■ Defendant also contends that he was not proved guilty beyond a reasonable doubt where the identification testimony was uncorroborated and he presented an unimpeached alibi defense. We disagree.

It is well established that the positive identification of a single witness is sufficient to support a conviction, provided that the witness is credible and observed the offender under conditions which would permit a positive identification to be made. (*People v. Mendoza* (1978), 62 Ill. App. 3d 609, 615-18, 378 N.E.2d 1318.) Ths is true even where the defendant presents alibi testimony which is corroborated by other witnesses. *People v. Shelby* (1984), 123 Ill. App. 3d 153, 165, 462 N.E.2d 761.

In the case at bar, Robert Hampton and Wilbert Shipp positively identified defendant as the offender who robbed them and shot and killed their friend, Dan Williams, on September 3, 1984. Both witnesses testified that they saw defendant while they were standing in the garage and that they continued to look at him and his gun after he ordered them to lie on the floor. Admittedly, there was a discrepancy regarding how long the robbery lasted. Regardless of whether the robbery took 15 minutes or only a few minutes, however, the witnesses had more than an adequate opportunity to view the offender and make a positive identification. *People v. Reed* (1980), 80 Ill. App. 3d 771, 400 N.E.2d 688.

The witnesses' description of the offender and his clothing was

---

[2]Defendant attempts to distinguish *Lockhart* on the ground that persons with conscientious or religious scruples to the death penalty do not constitute a "distinctive group" for purposes of the fair cross-section requirement. (*Lockhart v. McCree* (1986), 476 U.S. 162, 175, 90 L. Ed. 2d 137, 149, 106 S. Ct. 1758, 1766.) We note, however, that this was the secondary holding in *Lockhart*. The primary holding was that the fair cross-section requirement does not apply to petit juries. 476 U.S. 162, 173, 90 L. Ed. 2d 137, 147-48, 106 S. Ct. 1758, 1764-65.

unimpeached. Moreover, both Hampton and Shipp selected defendant's photograph from an array of 15 photographs and thereafter identified him in separate lineups. There is not a scintilla of evidence that their out-of-court identifications were suggestive.

Defendant correctly notes that there was no physical evidence to corroborate the witnesses' identification. Defendant, however, was not arrested until 11 days after the robbery and murder and his apartment was not searched until several hours after he had spoken with his sister on the telephone from the police station where he was being held. It is apparent that defendant had the time and the opportunity to dispose of any incriminating evidence.

■ Finally, we do not believe that the jury was obliged to believe defendant's alibi defense. That defense was presented by witnesses who had an obvious bias and interest. Moreover, their testimony was not consistent with what defendant initially told the police upon his arrest. At trial, defendant, his mother and her friend, Willie Williams, all testified that defendant did not leave the apartment at 6632 South Lowe until 11 a.m. on September 3, 1984. In his first conversation with the police, however, defendant said that he had left the apartment between 9 and 10 a.m., which is consistent with the evidence that the crimes occurred between 9:30 and 10 a.m. at 7009 South Lowe, less than four blocks from defendant's apartment.

Upon our review of the record, we are satisfied that defendant was proved guilty beyond a reasonable doubt of murder and armed robbery.

IV

■ Defendant contends further that the prosecutors made improper and inflammatory comments in final arguments. The prosecutor stated that any inconsistencies in the witnesses' testimony were minor and suggested that if defense counsel dwelled on them in his closing argument, he would be trying to confuse and mislead the jury and create a "smoke cover."

We agree with defendant that the comments regarding defense counsel were improper. (*People v. Weathers* (1975), 62 Ill. 2d 114, 338 N.E.2d 580; *People v. Wilson* (1983), 120 Ill. App. 3d 950, 961, 458 N.E.2d 1081.) However, similar comments generally have been held to be nonprejudicial. (See *People v. Hunter* (1984), 124 Ill. App. 3d 516, 548, 464 N.E.2d 659; *People v. Robinson* (1980), 91 Ill. App. 3d 1138, 1146, 415 N.E.2d 585 (and the cases cited therein).) Upon our review of the record, we are unable to conclude that the objected-to remarks could have been a material factor in defendant's conviction.

■■ Defendant next complains of the following comment in rebuttal closing argument:

"There is one thing you do have, and that is Mr. Hampton and Mr. Shipp, and if you think they are not positive that this is the person [who] robbed them and blew away their friend that day, then we are all just wasting our time."

We note, however, that defense counsel did not object to this remark at trial nor did he cite it in his motion for a new trial. It is well established that alleged errors must be objected to at trial and noted in the post-trial motion in order to be preserved for review. See *People v. Thomas* (1983), 116 Ill. App. 3d 216, 220-21, 452 N.E.2d 77 (and the cases cited therein).

Even assuming that a timely objection had been made, we would find no error in this remark. In our judgment, the prosecutor was merely arguing in a forceful manner that he had proved his case against defendant. In *People v. Hicks* (1981), 101 Ill. App. 3d 238, 427 N.E.2d 1328, the prosecutor stated: "[The criminal code] protects everyone, and if a guilty conviction on all counts is not returned, then we may as well throw the code right out the window." 101 Ill. App. 3d 238, 242, 427 N.E.2d 1328.

In *Hicks*, defendant argued that this comment was an improper expression of personal opinion, implying that the evidence was so clear that only one conclusion was possible. In rejecting this argument, the court stated that the prosecutor is entitled to argue his case to the jury and is entitled to argue the evidence and reasonable inferences from that evidence. (101 Ill. App. 3d 238, 242, 427 N.E.2d 1328.) "Moreover," the court continued, "it is certainly proper for the prosecutor to argue that he has proved his case to the jury." (101 Ill. App. 3d 238, 242, 427 N.E.2d 1328.) As in *Hicks*, we do not believe that the prosecutor's remark was improper.

## V

Defendant was sentenced to serve concurrent terms of 60 years for murder and 30 years for armed robbery. Defendant contends that these sentences are excessive. We disagree.

■■ The imposition of a sentence is a matter of judicial discretion and absent an abuse of this discretion, the sentence of the trial court may not be altered upon review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882.) An extended-term sentence may be imposed when a defendant is convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. (Ill. Rev. Stat. 1983, ch. 38, par.

1005—5—3.2(b).) "Heinous" has been defined as "hatefully or shockingly evil: grossly bad: enormously and flagrantly criminal." (*People v. La Pointe* (1981), 88 Ill. 2d 482, 501, 431 N.E.2d 344, quoting Webster's Third New International Dictionary.) "Brutal" has been defined as "grossly ruthless," "devoid of mercy or compassion: cruel and cold-blooded." (88 Ill. 2d 482, 501, 431 N.E.2d 344.) We are unable to conclude that an extended-term sentence was inappropriate.

Defendant robbed three men at gunpoint, then shot and killed Dan Williams without provocation. It appears that the shooting was premeditated because although defendant was angered by the manner in which the victim threw his change and his wallet on the floor, defendant did not immediately shoot him. He first told Williams, "Son of a bitch, you thinking I'm playing with you, don't you. I'm not playing with you. You get up and walk out that back door." He then followed Williams to the rear door of the garage, then shot him in the back of the head, killing him instantly. The robbery had been completed and Williams offered no resistance to defendant.

In our judgment, these facts clearly indicate that the killing was exceptionally "brutal" or "heinous," indicative of wanton cruelty, as those terms have been defined by our supreme court. Although defendant had no prior criminal record and presented evidence of his good character at the sentencing hearing, the most important factor to be considered in imposing sentence is the seriousness of the defendant's crime. (*People v. Morgan* (1975), 29 Ill. App. 3d 1043, 1045, 332 N.E.2d 191.) Moreover, we note that at his sentencing hearing, defendant expressed no remorse for his actions. The court could have taken this into account in imposing an extended-term sentence. *People v. La Pointe* (1981), 88 Ill. 2d 482, 501, 431 N.E.2d 344.

We believe that this case is clearly distinguishable from *People v. Kane* (1986), 140 Ill. App. 3d 928, 489 N.E.2d 500, cited by defendant. In *Kane*, a 17-year-old defendant robbed and murdered a taxi driver. The appellate court reduced his 80-year extended-term sentence to 40 years because of the defendant's youth and expression of remorse. Here, defendant was 30 years old at the time of the offenses and expressed no remorse for his actions.

Based upon our review of the record, we are unable to conclude that either the 60-year extended-term sentence for murder or the 30-year sentence for armed robbery were excessive. Accordingly, those sentences are affirmed.

■■ In his supplemental *pro se* brief, defendant raises numerous additional issues. He initially contends that the trial court erred in instructing the jury on the elements of felony murder where the indict-

ment did not allege felony murder. The record indicates otherwise. The indictment returned by the grand jury charged defendant with felony murder. Defendant also alleges that the prosecutor improperly commented on defense counsel's failure to call Danny Turner as a witness. We believe, however, that this comment was invited by defense counsel's argument that Turner's inability to identify defendant cast doubt on the identification testimony of Robert Hampton and Wilbert Shipp. Any error in this comment must be deemed to be harmless in view of the strong evidence of defendant's guilt. Accordingly, we find no merit in defendant's related argument that his appointed counsel on appeal was ineffective for not raising this issue.

■■ Defendant objects to testimony elicited by the prosecutor from the victim's widow that they had five children. We agree that this testimony was improper but we note that on defense counsel's objection, the court informed the jury that such testimony was "irrelevant" and instructed them to disregard it. In view of this prompt action by the court, we find no serious prejudice to defendant.

■■ Defendant argues further that the trial court committed reversible error in not asking prospective jurors a series of questions submitted by defense counsel prior to jury selection. The questions were intended to inform the jury that defendant was presumed to be innocent, that the State had to prove his guilt beyond a reasonable doubt, that he was not required to present any evidence in his own behalf and that his failure to testify could not be held against him. The record reflects, however, that the court did ask the first three questions to which defendant refers in his brief. It is immaterial that the court did not ask the prospective jurors whether they would attribute any significance to defendant's failure to testify because he did testify.

■■ Defendant next contends that he was denied the effective assistance of counsel at trial because his attorney failed to interview Danny Turner, who, according to defendant, would have exonerated him. Defendant's contention is wholly speculative and based on matters outside the record that cannot be considered on direct appeal.

■■ Defendant also argues that the trial court erred in denying his motion *in limine* to bar the introduction into evidence of the "mug shots" which the police showed to the robbery victims. Defendant submits that these photographs improperly suggested to the jury that he had a criminal record. We note, however, that 8 of the 15 photographs in question, including defendant's, are Polaroids and do not in any way indicate that the persons depicted had been arrested. (The other seven photographs accurately may be described as "mug

shots.'') Moreover, defense counsel specifically declined the court's offer to send only the Polaroids to the jury for their deliberations.

 Over defense counsel's objection, an investigator was allowed to testify that he put together "a group of photos of subjects from the area, past offenders, people—." Although the officer should not have used the expression "past offenders," we do not believe that this reference necessarily implied that all of the persons depicted had prior records. Based on our reading of the record it appears that defense counsel was apprised of the circumstances under which defendant's photograph had been obtained but declined to cross-examine the investigator on this matter. In our judgment, defendant was not prejudiced by this testimony.

 We find no merit in defendant's argument that the investigator's testimony that the eyewitnesses selected defendant's photograph and identified him in a lineup was inadmissible hearsay. Under section 115—12 of the Code of Criminal Procedure (Ill. Rev. Stat. 1983, ch. 38, par. 115—12), such testimony is not rendered inadmissible by the hearsay rule where, as here, the declarants testified at trial and were subject to cross-examination concerning their statements.

 Defendant complains that he was forced to use two peremptory challenges to excuse two prospective jurors who should have been excused for cause. At the beginning of *voir dire*, Elaine Freier stated that she might be prejudiced against someone who had been arrested. When the court explained that many persons who are arrested are released and then asked her whether she could give both sides a fair trial, Ms. Freier responded affirmatively. Later in the jury selection process, Ms. Freier was asked whether there was anything that would affect her consideration of the case before she heard the evidence. She said no, and reiterated that she could be a fair and impartial juror.

Apparently, defense counsel moved to dismiss Ms. Freier for cause based on her initial comment about arrestees. The court denied the motion and counsel used a peremptory challenge to excuse her. We find no error in the court's ruling. Based on the colloquy between the court and Ms. Freier, we are unable to conclude that the denial of the motion to excuse for cause constituted an abuse of discretion.

At *voir dire*, Diane Mandernach stated that she might be affected by stories she had heard of defendants who had been acquitted because certain evidence was not admissible. She stated further that she could not follow the law in good conscience. When questioned further by the court, however, Ms. Mandernach said that she would not disregard the court's instructions on the law and would give both sides a

fair and impartial trial. After a sidebar discussion at which defense counsel apparently moved to strike Ms. Mandernach for cause, which motion was denied, the court again asked her if she could follow the law and she responded affirmatively. Defense counsel then used another peremptory challenge to excuse her. Subsequently, counsel requested an additional peremptory challenge because of the one he had used against Ms. Mandernach. The court refused, noting that counsel still had one peremptory challenge remaining. Defense counsel did not renew his motion for an additional peremptory challenge after he used his last one, nor did he move to strike any other prospective jurors for cause.

Although it is arguable that Ms. Mandernach should have been excused for cause, we believe that we must defer to the discretion of the trial judge who saw her answer his questions and was able to observe her demeanor. Ms. Mandernach twice stated that she would follow the court's instructions on the law and assured the court that she would afford both sides a fair and impartial trial. We cannot say that the court's acceptance of these answers was clearly erroneous. Moreover, we must point out that after defense counsel used his last peremptory challenge, he did not request any additional challenges and did not move to strike any other prospective jurors for cause.

■■ Defendant objects to numerous remarks of the prosecutors in their closing arguments. Some of these remarks have been discussed earlier in this opinion and will not be reconsidered; others were not objected to at trial and have been waived.

However, we do note defendant's complaint concerning the prosecutor's comment that the evidence was overwhelming and we find that it was not objectionable and cannot be construed as an expression of the prosecutor's personal opinion of defendant's guilt. Nor do we find any error in the prosecutor's comments on defendant's delay in giving consent to search his apartment and his early morning telephone call to his sister. The inference the prosecutor was seeking to draw from this evidence, that defendant may have delayed giving his consent until after he had arranged to dispose of any incriminating physical evidence, was reasonable.

■■ Finally, defendant contends that the identification procedures were impermissibly suggestive and that he was not proved guilty beyond a reasonable doubt. Upon our review of the record, we find no evidence that the out-of-court identifications of defendant were influenced by any improper conduct of the police. For the reasons set forth earlier in this opinion, we are satisfied that defendant was proved guilty beyond a reasonable doubt of murder and armed robbery.

In light of the foregoing, we affirm the judgments and sentences of the trial court in all respects except as to the court's ruling on the issue of the State's discriminatory use of peremptory challenges. Regarding that issue, we remand the case to the circuit court with directions to conduct a hearing to permit the defendant to present evidence to substantiate his claim of unconstitutional discrimination in the exercise of peremptory challenges. If the court finds that a *prima facie* showing of such discrimination has been made, the court is directed to determine whether or not there is a neutral explanation by the State for the exercise of the questioned peremptory challenges. The circuit court is directed to conduct this hearing in accordance with *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712. In the event the court finds that the prosecutor did not purposefully discriminate, the court is directed to confirm the judgments and sentences. If the court finds that the prosecutor did purposefully discriminate, the court is directed to order a new trial. See *People v. Johnson* (1986), 148 Ill. App. 3d 163, 180, 498 N.E.2d 816.

Affirmed in part; remanded with directions.

LORENZ and MURRAY, JJ., concur.