Curtis WILLIAMS, a/k/a Curtis Marshall, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–85–269–CR.

Court of Appeals of Texas, Corpus Christi.

June 12, 1986.

836

J. Manuel Banales, Corpus Christi, for appellant.

Grant Jones, Dist. Atty., Corpus Christi, for appellee.

Before NYE, C.J. and KENNEDY and SEERDEN, JJ.

## OPINION

NYE, Chief Justice.

This is an appeal from a conviction for the offense of sexual assault. A jury assessed appellant's punishment at ten years' confinement and a five thousand dollar fine, each probated for ten years. Appellant brings six grounds of error primarily complaining of prosecutorial misconduct. The sufficiency of the evidence to support the conviction is not challenged. We affirm the judgment of the trial court.

■ In his first two grounds of error, appellant complains of two remarks made by the prosecutor during the jury voir dire examination, revealing to the jury his personal opinion that probation was not an appropriate punishment in cases such as this. While we agree that the prosecutor's personal opinion as to whether probation was appropriate was irrelevant and inappropriate, in this instance we fail to find that appellant was harmed. Although the jury was authorized to assess appellant's punishment at as much as twenty years' imprisonment and a ten thousand dollar fine, the jury only assessed the appellant ten years and a five thousand dollar fine and recommended probation for both the imprisonment and the fine. Appellant was obviously not harmed by either of the prosecutor's remarks regarding probation. In addition, the trial court promptly sustained appellant's objections to both remarks and instructed the jury to disregard them, thereby curing any possible error. *See Boyd v. State,* 643 S.W.2d 700, 706–07 (Tex.Crim.App.1982). Appellant's first two grounds of error are overruled.

In his fifth ground of error, appellant complains of improper jury argument by the prosecutor in the guilt/innocence phase when he referred to appellant as a "parasite." Appellant objected to the reference, and the jury received another instruction to disregard. His motion for mistrial was denied.

■ In reviewing whether an improper comment by a prosecutor constitutes reversible error, the test is whether, in the light of the record as a whole, the comment was: 1) extreme or manifestly improper, harmful, and prejudicial; 2) violative of a mandatory statute; or 3) harmful to the accused because it injected damaging new facts into the trial proceeding. *Brooks v. State,* 642 S.W.2d 791, 798 (Tex.Crim.App. 1982); *Longoria v. State,* 663 S.W.2d 649, 652 (Tex.App.—Corpus Christi 1983, no pet.); *Charles v. State,* 626 S.W.2d 868, 870 (Tex.App.—Corpus Christi 1981, pet. ref'd).

■ Appellant cites *Renn v. State,* 495 S.W.2d 922 (Tex.Crim.App.1973), and *Stein v. State,* 492 S.W.2d 548 (Tex.Crim.App. 1973), as requiring reversal. We do not agree. These two cases involved repeated inflammatory remarks by the prosecution about each defendant. *Renn* ("hippie," "anti-Christ," "Swastika," and "Communist"); *Stein,* ("hippie"). In the instant case, the prosecutor only used the word "parasite" once, and made no other derogatory characterizations of appellant. *See Hoover v. State,* 107 Tex.Cr.R. 600, 298 S.W. 438, 441 (1927) (figurative language used by prosecutor in jury argument referring to the defendant as a "worm" and a

"serpent" was held harmless). Any harmful effect of this improper reference was cured by the trial court's immediate instruction to the jury to disregard the comment. *Smith v. State,* 653 S.W.2d 835, 841 (Tex.App.—Corpus Christi 1982, aff'd; pending on motion for rehearing). The fifth ground of error is overruled.

Appellant next complains that the prosecutor's jury argument in the punishment phase of the trial was improper and requires reversal because the prosecutor invited the jury to speculate on matters not in evidence which denied appellant a fair trial. Specifically, appellant complains of the following portions of the prosecutor's argument:

[Prosecutor, Mr. Babcock]: I do not recommend probation for Mr. Williams, and there's one reason, other than the testimony or the actual testimony that was brought to you in the guilt or innocence phase, and the reason is L.V. L.V. is the difference. L.V. is a twenty-year-old student, a twenty-year-old single girl, has come up here and you saw how she shook when she got up on that stand, and she testified to something that is appropriate only—

THE COURT: You have spoken five minutes.

MR. BABCOCK: —is appropriate only in the punishment phase. You, as members of the jury, were not entitled to know about L.V.

MR. BANALES: Your Honor, we object.

THE COURT: Sustain the objection and instruct the jury to disregard.

MR. BANALES: We are also going to move for a mistrial, Your Honor, please.

THE COURT: Yes, the objection will be overruled. Mistrial denied.

MR. BABCOCK: The purpose of the two phases is at the guilt or innocence phase, you can learn about the accusation for which the accused is sitting on trial. At the punishment phase, you are entitled to hear of reputation testimony—of a person's reputation for being a peaceable and law-abiding citizen. And I did not bring you anyone other than a civilian, a single, female girl who is twenty years old, who goes to Del Mar College and who is a computer programmer or computer science major. And I brought you that testimony.

The record reflects that L.V. was a victim of another sexual assault for which appellant was charged and which was pending at the time of this trial. L.V. testified for the State as a reputation witness only, and testified that appellant's reputation was bad.

The following discussion with the trial court regarding this jury argument was had outside the presence of the jury:

THE COURT: —except that—whether you would have been successful in showing what you say or not, I don't know— except to point out that so far as this record is concerned, L.V. has not been identified as the victim of any subsequent event.

MR. BANALES: But the argument came close to saying that, Your Honor.

THE COURT: Yes, I agree, and that's the reason I sustained your objection.

\*　　\*　　\*　　\*　　\*　　\*

THE COURT: Well, as—Mr. Babcock did go on, and Mr. Babcock has taken the position that he was cut off before he was entitled to state—make his full statement about why it was important to L.V. But this record is silent as to who L.V. is.

MR. BANALES: Well, of course the black and white of it is going to be silent, but the suggestion is very strong, Your Honor. I don't think that there's anyone in the courtroom who doesn't know from the statements made by Mr. Babcock what her status is with regard to the case.

It is improper for a prosecutor to imply to a jury that there exists pertinent evidence which is not available to the jury. *Little v. State,* 567 S.W.2d 502, 505 (Tex. Crim.App.1978). Appellant argues the prosecutor's statements tended to give the jury the impression that L.V. was a victim of another sexual assault committed by

appellant, and that there was something more to this witness' testimony that the jury was allowed to hear.

We do not think the prosecutor's argument necessarily leads to such a conclusion. The prosecutor's statement that the jury had not been entitled to know about L.V. was somewhat ambiguous, but the prosecutor subsequently clarified his statement by explaining that reputation evidence is only appropriate during the punishment phase of the trial. The jury had no information about L.V. other than that she attended the same school as appellant and was familiar with his reputation.

 Although the prosecutor's argument was improper, we do not consider that the argument was extreme or manifestly improper or violative of a mandatory statute, or to have injected new facts detrimental to appellant. In any event, any possible harm was again cured by the trial court's prompt instruction to the jury to disregard. *Anderson v. State*, 633 S.W.2d 851, 855 (Tex.Crim.App.1982). We pause to note again that the appellant received a rather mild punishment from the jury after it heard this argument. We do not find any error which denied appellant a fair trial. Appellant's sixth ground of error is overruled.

By his fourth ground of error, appellant challenges statements made by the prosecutor during the State's opening statement in the guilt/innocence phase which he characterizes as inserting unsworn testimony as to the ultimate issue in the case. Appellant complains of the following remarks:

MR. BABCOCK: May it please the Court, counsel, ladies and gentlemen of the jury panel: This is an unusual case. It's unusual because the victim is black. It's a black female who is going to come before you and tell you her story, what had happened, what the Defendant and his buddy, David Williams, did to her. *Both fellows raped this girl.*

MR. BANALES: Your Honor, I'm going to object to that. He's testifying. He's asserting facts. He's not testifying—

he's not presenting an opening statement, Your Honor, please.

THE COURT: All right. Sustained.

MR. BANALES: We will ask the Court for an instruction to disregard.

THE COURT: The Court will instruct the jurors that statements of counsel do not constitute evidence, but statements of what he expects the proof to establish, and is not to be considered by the jury as evidence, itself.

MR. BANALES: We will move for a mistrial, Your Honor.

THE COURT: Denied.

MR. BABCOCK: On July the twenty-seventh of 1984, [the victim] had been over on the north side part of town, in "The Cut."

MR. BANALES: Your Honor, we are going to object again. His presentation is not an opening statement. The manner of his presentation is more like he's testifying to the jury.

THE COURT: Overruled. (Emphasis added.)

 TEX.CODE CRIM.PROC.ANN. art. 36.01(3) (Vernon 1981) sets out the purpose and scope of the State's opening statement. Subsection 3 provides: "The State's attorney shall state to the jury the nature of the accusation and the facts which are expected to be proved by the State in support thereof." Although the prosecutor's statements in this instance did not go beyond the nature of the accusation or the evidence subsequently proffered as proof of the accusation, the prosecutor did not qualify his assertions as being matters he expected to prove. He asserted the ultimate issue of the case as a fact.

However, the trial court instructed the jury as to the purpose of the opening statement and that the prosecutor's statements did not constitute evidence. The court's instruction was prompt, plain, and precise, and could leave no doubt in the jurors' minds as to the proper interpretation of the prosecutor's statements. We find the curative instruction was sufficient to obviate any possible harm. *See Sweaney v. State*, 632 S.W.2d 932, 935 (Tex.App.—Fort Worth

1982, no pet.). Ground of error four is overruled.

In his third ground of error, appellant argues that the trial court erred in failing to grant appellant's motion to prohibit the state from exercising its peremptory jury strikes against blacks solely on the basis of race. After several members of the jury panel were excused for cause, there remained three black women on the panel. The prosecutor exercised peremptory strikes against two of the black women. The jury that was ultimately chosen consisted of six Anglos, one Black and five people with Spanish surnames. However, appellant contends that the action of the trial court in denying his motion violated his constitutional right to a jury composed of representative members of his community. The appellant in this case is black.

In a most recent case, the United States Supreme Court overruled the evidentiary burden that *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), placed on criminal defendants complaining of the state's use of peremptory jury strikes to exclude members of the defendant's own race from the petit jury. *Batson v. Kentucky,* — U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The Court based its decision on the equal protection clause of the fourteenth amendment. A defendant no longer needs to show the systematic exclusion of members of a cognizable racial group over a period of years, as *Swain* required. Now a defendant may establish a prima facie case of purposeful racial discrimination solely on the evidence in the defendant's own trial. Once a defendant has made out a prima facie case, the burden shifts to the state to provide a benign explanation for striking jurors of the defendant's race.

According to *Batson,* in order to establish a prima facie case of purposeful racial discrimination in the state's selection of a particular petit jury, a defendant must show that:

1) he/she is a member of a "cognizable racial group," and "the prosecutor has exercised peremptory challenges to re-

move from the venire members of the defendant's race;"

2) "such facts and any other relevant circumstances [which] raise an inference that the prosecutor used peremptory challenges to exclude the [panel members] from the petit jury on account of their race;" and

3) "[t]he defendant may also rely on the fact that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate."

In the instant case, appellant sought to prevent the state from exercising strikes in a racially discriminatory manner. Appellant presented and urged this motion before either side exercised any peremptory strikes. He noted to the trial court that three Blacks remained on the jury panel after challenges for cause, and that the state "could" use its peremptory strikes against all three. He asked that the trial court require the state to provide a neutral explanation "if" the prosecutor sought to strike any of the three Blacks.

The record shows that the appellant did not object to the State's peremptory strikes after they were exercised or to the composition of the jury after it was selected. In light of *Batson,* the proper time to raise such an objection was after the peremptory strikes had been made, but prior to the jury being sworn. Under *Batson,* the prosecution must necessarily exercise its strikes to enable the defendant to make a prima facie showing that the strikes were used in a racially discriminatory fashion. Appellant's argument presumes that the state will act with this purpose. This argument misplaces the burden of proof. The Supreme Court clearly stated in *Batson* that, as in any equal protection case, the burden is on the party alleging the discriminatory action to prove the existence of a racially discriminatory purpose.

There still exists, at least initially, a presumption that the state has exercised its peremptory challenges with a neutral purpose, though now it is a realistically rebut-

table one. *Batson* does not require the state to provide a benign justification for peremptorily striking Blacks from a petit jury absent a prima facie showing by the defendant that the strikes were made solely on the basis of race.

■ We find that, by not objecting to the prosecutor's peremptory strikes after they were made, appellant did not preserve anything for our Court to review. There is no showing that appellant was dissatisfied with the jury ultimately selected. Absent a prima facie showing by appellant, we hold that the trial court acted correctly in overruling appellant's motion.

■ Even if appellant had properly preserved his objection, the circumstances of this case do not amount to a prima facie case. Although *Batson* requires a showing that members of appellant's race were removed from the jury by the prosecution, it gives little guidance as to how many members of appellant's race must be struck in order to establish a prima facie case. In *Batson*, the state struck all four Blacks from the panel. It is obvious from the majority's opinion that there is no quantitative formula with which to gauge peremptory challenges of minority panel members. Such determinations should be based on all the relevant circumstances in the particular case. The Court in *Batson* places wide discretion in trial judges to make these determinations, but requires that they "undertake 'a sensitive inquiry into such circumstantial and direct evidence of intent as may be available,'" —— U.S. at ——, 106 S.Ct. at 1721 (quoting *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977)).

The Court discussed several factors which should be considered in making this determination, such as whether there is a " 'pattern' of strikes against black jurors" on the panel. A trial court can also consider "the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges."

We find the decisions of other states' courts on similar issues are also helpful in considering this question. Both California and Massachusetts have reached similar holdings as *Batson* based upon their own state constitutions' versions of the sixth amendment. *Commonwealth v. Soares*, 377 Mass. 461, 387 N.E.2d 499 (1979); *People v. Wheeler*, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978).

In Massachusetts, a prima facie case is shown if "(1) a pattern of conduct has developed whereby *several* prospective jurors who have been challenged peremptorily are members of a discrete group, and (2) there is a likelihood they are being excluded ... solely by reason of their group membership." (Emphasis ours.) *Soares*, 387 N.E.2d at 517. In *Soares*, there was strong evidence of disproportionate exclusion of minorities by the prosecution. The state had challenged twelve of the thirteen Blacks on the panel. In addition, 92% of the Blacks were struck, as opposed to only 34% of the white panel members. The court in *Soares* noted that 100% of minority jurors need not be challenged in order to prove a discriminatory purpose. It would seem to us also that striking a disproportionate number so as to render minority representation on the jury impotent can be enough to make out a prima facie showing. *Id.*

The prosecution in *People v. Wheeler*, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748, struck all the Blacks on the panel (at least seven), which produced an all-white jury. That case involved a black defendant charged with murdering a white man. The court held that the defendant had established a prima facie case which showed a strong likelihood that the state had removed jurors solely on the ground of group bias, rather than any specific bias.

The court in *Wheeler* also delineated several factors to be considered in evaluating these cases: 1) whether the state struck all or most of the group members or used a disproportionate number of its strikes against group members; 2) whether the struck jurors shared only one characteristic

(group membership) and were otherwise heterogeneous; 3) whether the prosecutor had engaged the struck jurors in "more than desultory *voir dire*," or had even questioned them at all; and 4) whether the crime involved is interracial. On the other hand, the court stated that the prosecution could show that it challenged similarly situated majority group members on identical or comparable grounds.

 In the case at bar, each side exercised ten challenges. The prosecution struck two Anglos, two Blacks, and six people with Spanish surnames. The prosecutor did not exercise strikes against all of the Blacks, only two out of three. More important, he did not use a disproportionate number of strikes on Blacks. In this case, the prosecution could have easily eliminated all the Blacks from the jury, had it chosen to do so.

Further, the crime involved in this case was intraracial; both the victim and the defendant were black. Unfortunately, not enough of the state's individual examination of the panel appears of record for us to evaluate the prosecutor's examination of the two black jurors he struck.

We finally take note of the 1980 census data regarding the race and ethnicity frequencies in the jurisdiction in which appellant was tried (i.e., Nueces County, Texas). According to these data, the general population of the county is 4.56% black and 82.11% white, with Hispanics generally categorized as white. Ethnically, 48.95% of the general population is of Spanish origin.[1] The jury which was ultimately selected in this case was 8.33% black, 41.66% Spanish surname, and 50% Anglo. Though there is no requirement that juries reflect the community in any exact proportion, the jury seated in this case did, in fact, reflect fairly the general population of Nueces County.

Taking into account all the relevant circumstances in the case, we find that appellant did not make a sufficient showing that the State exercised its peremptory strikes improperly or solely on the basis of race. The trial court did not err in refusing to require the State to provide neutral explanations for its removal of Blacks from the petit jury panel.

We pause to caution the trial courts to exercise sensitive and serious consideration of such motions in the future selection of juries.

Finding no reversible error, the judgment of the trial court is affirmed.

---

1. This data is compiled in the U.S. Bureau of the Census, County and City Data Book 1983, 550

(Table B) (1983).