George Allen CLEVELAND, Appellant,

v.

The STATE of Texas, State.

No. 2–86–078–CR.

Court of Appeals of Texas,
Forth Worth.

April 30, 1987.

Alley & Alley and T. Richard Alley, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and Betty Stanton, Asst. Dist. Atty., Fort Worth, for the State.

Before JOE SPURLOCK, II, FARRIS and KELTNER, JJ.

## OPINION

KELTNER, Justice.

This is an appeal of George Allen Cleveland's conviction by jury of burglary of a building. *See* TEX.PENAL CODE ANN. sec. 30.02(a)(1) (Vernon 1974). After hearing the evidence, the jury rendered a verdict of true on two enhancement paragraphs, and assessed punishment at fifty years in the Texas Department of Corrections. *See* TEX.PENAL CODE ANN. sec. 12.42(d) (Vernon Supp.1987).

Cleveland has raised thirteen points of error. We reverse on the twelfth point of error because of the State's systematic exclusion of black jurors from the jury.

We hold that the action of the State in the use of its peremptory strikes to strike all six black members of the jury panel violated Cleveland's rights under the equal protection clause of the United States Constitution. As a result, we reverse the judgment of the trial court and remand the case for a new trial.

Cleveland, a black man, was indicted for the burglary of a building. After the voir dire examination the State and Cleveland exercised their peremptory challenges to the jury panel. The State used six of its

ten challenges to strike all six black members of the jury panel. A jury composed of only white persons was selected. After the jury was sworn, but before the start of the evidence, Cleveland filed a motion requesting the court to dismiss the jury panel because of the State's systematic exclusion of blacks. Cleveland submitted testimony in support of the motion.

Debie Moore, a deputy district clerk assigned to the trial court, testified that the State of Texas peremptorily struck jurors number 2, 5, 13, 25, 30 and 32, and that the defendant did not strike any of those members of the panel. After viewing the impanelled jury, Moore testified that no black persons were impanelled. Cleveland's attorney, George Mackey, also testified. He testified that jurors number 2, 5, 13, 25, 30 and 32 were the only black persons of the prospective jury panel. Louis Sturns, formerly a prominent lawyer and now a district judge, also testified. He testified that during his years as a criminal defense lawyer, he felt that the Tarrant County Criminal District Attorney had utilized a practice of systematically excluding black persons from jury service.

The State called no witnesses during the hearing and did not controvert any of Cleveland's evidence. However, the chief trial prosecutor assigned to the trial court did testify on the issue of the exclusion of black jurors at a motion for new trial hearing. He testified that, in his opinion, the State did not engage in systematic exclusion of any particular class of jurors. However, he admitted on cross-examination that every black member of the panel who was eligible to sit on the jury was struck by the State by the use of peremptory challenges. He offered no explanation for striking any of the prospective black members of the panel.

Cleveland contends the court erred in overruling his motion requesting the court to dismiss the jury panel because of systematic exclusion. We agree.

This case is controlled by two United States Supreme Court decisions and one decision of the Texas Court of Criminal Appeals. *Griffith v. Kentucky*, ── U.S. ──, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); *Batson v. Kentucky*, 476 U.S. ──, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Henry v. State*, 729 S.W.2d 732 (Tex.Crim.App.1987).

■ In *Batson*, the United States Supreme Court reaffirmed its earlier decision in *Strauder v. West Virginia*, 100 U.S. (10 Otto) 303, 25 L.Ed. 664 (1880), which held, "the State denies a black defendant equal protection of the laws when it puts him on trial before a jury from which members of his race have been purposefully excluded." *Strauder*, 100 U.S. at 305.[1] The Supreme Court also specifically overruled the language in *Swain v. Alabama* that stated a black defendant could make out a prima facie case of purposeful discrimination only on proof of the State's systematic exclusion of black jurors from all jurys rather than on exclusion in the defendant's own case. *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). In retreating from *Swain*, the Supreme Court ruled that a defendant may establish purposeful discrimination by showing that:

1. He is a member of a cognizable racial group. *Batson*, 106 S.Ct. at 1723.

2. The prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. *Id.* In this regard, the defendant is entitled to rely on the fact, "that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" *Id.*

3. The above "facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Id.*

■ If the defendant proves these facts, a prima facie case of purposeful dis-

---

1. In *Strauder,* the United States Supreme Court held that a West Virginia statute that provided that only white men could serve as jurors was unconstitutional.

crimination in the selection of a jury by the State's exercise of peremptory challenges is established. Once a prima facie case is made by the defendant, the burden shifts to the State to demonstrate a "neutral explanation for challenging black jurors." *Id.* In this regard, the State cannot simply rebut the defendant's prima facie case by stating that it exercises challenges on the belief that the panelists, "would be partial to the defendant because of their shared race." *Id.* Neither may the State rebut the defendant's prima facie case by denying that it had a "discriminatory motive" or affirming its "good faith in individual selections." *Id.* Instead, the State may make a neutral explanation related to the particular case. Thereafter, it is the duty of the trial court to determine if the State has established a sufficient neutral explanation for striking members of a cognizable social group.

In the instant case, there was no effort by the State to advance any "neutral explanation" of the exclusion of the six black jurors. Instead, the State merely denied that it had a racial motive in striking the jurors. This falls afoul of the Supreme Court's direction in *Batson,* 106 S.Ct. at 1723.

The State does not deny that it violated the new rule announced in *Batson.* Instead, the State contends that *Batson* does not apply to this case.

In this regard, we note that the jury was selected on March 25, 1986, and the trial proceeded through March 27, 1986. *Batson* was decided several days later, on April 30, 1986. There is no doubt that the decision in *Batson* is a clear break with the past rule of the Supreme Court as announced in *Griffith,* 107 S.Ct. at 715. As a result, there was no possible way for the State, the defendant and the judge to know that a new standard would apply in the protection of Cleveland's rights under the equal protection clause of the United States Constitution.

■ Nonetheless, the decision in *Batson* is retroactive to the extent that it will apply, "to all cases, state or federal, pending on direct review or not yet final, with no

exception for cases in which the new rule constitutes 'a clear break' with the past." *Griffith,* —— U.S. at ——, 107 S.Ct. at 716, 93 L.Ed.2d at 661; *also see Garza v. State,* 725 S.W.2d 482, 482 (Tex.App.—Corpus Christi 1987). As a result, we hold that the rule in *Batson* applies to the trial of Cleveland's case and that the inequities condemned in the Supreme Court's opinion may be raised here.

■ The State also contends that Cleveland did not properly object to the State's use of peremptory strikes and as a result, preserved no error. Specifically, the State complains that Cleveland did not object to the composition of the jury until after the jury was sworn, citing *Williams v. State,* 712 S.W.2d 835, 840 (Tex.App.—Corpus Christi 1986, no pet.). The State's reliance on our sister court's opinion is sound. In *Williams,* the Corpus Christi court held that, "the proper time to raise such an objection was after the peremptory strikes had been made, but prior to the jury being sworn." *Id.* at 840; *also see Rodgers v. State,* 725 S.W.2d 477, 479 (Tex.App.—Houston [1st Dist.] 1987). However, the ruling in *Williams* is contrary to the Texas Court of Criminal Appeals decision in *Henry.* In *Henry,* as in the instant case, the defendant did not object before the jury was sworn and other members of the jury discharged. *Id.* at 735.

The Court of Criminal Appeals noted that Henry had been tried prior to the Supreme Court's decision in *Batson,* and could not have known of the procedure for objecting to the exclusion of minorities from the jury panel. *Id.* As a result, the Court held that on the facts of *Henry,* the defense had sufficiently raised the issue of the State's use of its peremptory strikes at trial to preserve the error *Batson* seeks to eliminate. *Id.* We hold that the error in the instant case is preserved. We make this ruling only for cases tried before *Batson.*

■ We note that for cases tried after *Batson,* objections made to the exclusion of minorities from a jury by the State's use of

peremptory challenges, should be made after the peremptory challenges, and before the jury is sworn and venire panel discharged. *Id.* at 737. Otherwise, we will consider the State's argument that any error is waived. *Id.*

Even though we reverse on the twelfth point of error, we must consider a challenge to the sufficiency of the evidence because if that challenge is sustained, a retrial is barred. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Graham v. State,* 643 S.W.2d 920, 924 (Tex.Crim.App.1981).

In reviewing the sufficiency of the evidence to support a conviction based upon direct evidence, the evidence is viewed in the light most favorable to the verdict. *See Flournoy v. State,* 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Bonham v. State,* 680 S.W.2d 815, 819 (Tex. Crim.App.1984). Naturally, a sufficiency of the evidence is a question of law. The issue on appeal is whether we as a court believe the prosecution's evidence or believe that the defense evidence outweighs the State's evidence.

The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the prosecution's evidence or believe that the defense evidence "outweighs" the State's evidence. *See Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied,* 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). If there is evidence which establishes guilt beyond a reasonable doubt, and if the trier of fact believes that evidence, we are not in a position to reverse the judgment on sufficiency of the evidence grounds. *See id.*

■ Cleveland complains that the evidence did no more than establish his presence at the scene of the crime. Texas courts have long held that mere presence at the scene of the crime will not support a

conviction. *Alvarado v. State,* 632 S.W.2d 608, 610 (Tex.Crim.App.1982). However, the evidence in this case establishes far more than Cleveland's presence at the crime scene. The evidence reveals that two Fort Worth police officers responded to a silent alarm at the Central Antique shop. When the officers arrived at the front of the building, they were able to look into the building through large plate glass windows. They observed two black males inside, fleeing up a well-lit staircase. One of the suspects was apprehended as he exited the building. At first, the other suspect could not be located. The entire perimeter of the building was secured and a search begun by five carloads of police officers, including a K–9 unit. While they searched the premises, a police helicopter hovered overhead, using its spotlight to illuminate the area. Shortly thereafter, Cleveland was found huddled under a coat at the far west end of the building, crouching in an 18″ gap between that building and an attached garage. Cleveland was positively identified as the second suspect seen running up the Central Antique staircase.

The owner of the building testified that the building was not then open to the public and he had not given consent for anyone to be in the building that night. Additionally, the State is aided by the presumption that an entry made without consent at nighttime is presumed to have been made with attempt to commit theft. *Mauldin v. State,* 628 S.W.2d 793, 795 (Tex.Crim.App. 1982); *Gutierrez v. State,* 666 S.W.2d 248, 250 (Tex.App.—Dallas 1984, pet. ref'd). As a result, it is clear that facts tending to prove every element of burglary of the building, (1) entrance into a building, (2) not then open to the public, (3) without effective consent of the owner, and (4) with intent to commit theft, were introduced into evidence.

Cleveland's cross-examination of one of the police officers did cast some doubt on the officer's ability to identify him as the man in the building. Specifically, the po-

 

lice report showed that Cleveland was wearing a gray coat when arrested instead of the black coat the officers claimed he was wearing when initially spotted. However, the jury, as trier of fact, is free to weigh the evidence given to them and may resolve any conflict in the testimony. *Banks v. State*, 510 S.W.2d 592, 595 (Tex. Crim.App.1974); *Isaac v. State*, 468 S.W.2d 855, 856 (Tex.Crim.App.1971).

It is clear there is sufficient evidence to uphold Cleveland's conviction. Since we reverse on the *Batson* complaint, we remand this case to the trial court for retrial.