(No. 55660—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. MURRAY HOOPER, Appellant.

*Order entered May 1, 1987.*

JUSTICE RYAN specially concurring:

I join in the supervisory order entered herein; however, by reason of the comments of my dissenting colleagues, I am compelled to express in writing the reasons for my concurrence with the supervisory order remanding to the trial court the cases involving a *Batson* issue (*Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712).

At the trial of the cases which we now consider, the issue of the misuse of peremptory challenges to exclude blacks was considered under the law as announced in *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824. Under that law, of course, the burden the defendant had to meet to establish a *prima facie* case of discriminatory exclusion of blacks was much different, and much more difficult for the defendant to meet, than it is under *Batson*. I believe it would be manifestly unfair to a defendant if this court were to make a determination from a record made under *Swain* law whether or not a *prima facie* case has been established under *Batson*. The focus and the burden of the defendant's proof and the elements to be proved are different now than they were under *Swain*. If the defendant can present evidence of the discriminatory use of peremptory challenges under *Batson* law which was not disclosed by the record made under *Swain* guidelines, he should have an opportunity to present such evidence for the trial court's consideration. As the Chief Justice suggests in

his dissent, it may well be that on remand the trial court will have to decide the *prima facie* question from a cold record, as this court could do now. But that will not necessarily be true in all cases. We should not preclude the defendant from making such an additional showing by deciding now in this court whether or not a *prima facie* case of discriminatory use of peremptory challenges has been made. I, too, am concerned with judicial economy. I, too, believe that "the public must understand that State courts will no longer tolerate the exclusion of black jurors because of their race." (Simon, J., dissenting at 258.) I, too, think that we must send "a clear signal of the vigor and determination with which the Supreme Court's mandate will be executed." (Simon, J., dissenting at 258.) I do not believe, however, that these laudable objectives should be achieved by cutting off a defendant's right to establish a record which will disclose a *prima facie* case of discrimination under the guidelines of *Batson*. Our supervisory order directs the trial court to conduct an expedited hearing "to permit the defendant to present evidence to substantiate his claim of unconstitutional discrimination in the exercise of peremptory challenges." I do not agree with my dissenting colleagues that we in this court, from a record made under *Swain* guidelines, should deny the defendant this right.

Contrary to Justice Simon's dissent, *People v. Mack* (1985), 105 Ill. 2d 103, does not characterize "claims of systematic racially discriminatory jury selection as 'emotional arguments.'" I authored the *Mack* opinion and find the language of the dissent to which I refer to be an unfair and incorrect construction of the language used in *Mack*. That opinion states:

> "Regardless of the many emotional arguments on this question that have been raised in this court ***." (105 Ill. 2d 103, 122.)

The question referred to in the quoted language is the systematic exclusion of blacks through the use of peremptory challenges. The quoted language simply says that many emotional arguments on this question have been raised. That is a far cry from characterizing the question itself, that is, racially discriminatory jury selection, as emotional arguments. Emotional arguments can be made for or against almost any subject, but that does not mean that the subject itself should be characterized as an emotional argument. Since I authored *Mack*, the manner in which the reference to that opinion has been inserted in Justice Simon's dissent makes it apparent that the purpose for the reference to *Mack*, and for the incorrect construction of that language, is to detract from the sincerity of my profession of good intentions in this concurrence.

It is possible that in some cases the record before us made under *Swain* guidelines may appear to clearly disclose a *prima facie* case of discriminatory use of peremptory challenges. In People v. McDonald, Nos. 63204, 63240 cons., as Justice Simon's dissent indicates, the prosecutor challenged 16 eligible black jurors. As flagrant as this example may appear, the defendant should be permitted to bolster this showing of apparent discrimination with whatever other evidence he may have which, under *Batson*, is relevant. If, following a hearing in the trial court, this example is as flagrant as it appears to be, it is doubtful that the *prima facie* issue created by our supervisory order will cast the severe burden my dissenting colleagues fear on the judicial system at either the trial or appellate level.

We cannot, however, become involved in a numbers game. At what point and under what circumstances should this court draw an arbitrary line based on the number of blacks peremptorily excused? What if 16

blacks, as in People v. McDonald, were peremptorily excluded but 5 blacks were seated on the jury? Can we say from a cold record disclosing these numbers alone that a *prima facie* discriminatory use of challenges has been established? Or what if five, four, three or two blacks were peremptorily challenged? Do those numbers alone disclose a *prima facie* case? Or suppose that three blacks were peremptorily challenged and that three blacks were seated as jurors, does this disclose a *prima facie* case of discrimination? Consider further that the three blacks who were seated as jurors under the last example were seated only after the State had exhausted its peremptory challenges. We must avoid arbitrarily deciding the delicate question we now consider solely from the number of blacks peremptorily excused as disclosed by the record. This is in accord with the holding of the New York court in *People v. Thompson* (App. Div. 1981), 434 N.Y.S.2d 739, which refused to inquire into the reasons for

> "a prosecutor's use of peremptory challenges merely because the prosecutor has used a particular number of his peremptory challenges to exclude black potential jurors, for it may well be that the prosecutor's peremptory challenges were properly exercised, but for reasons that are not as readily apparent to those who were not in the position of the Judge who attended the *voir dire*. Thus, while exclusion of a significant number of black potential jurors will usually be part of the case of a defendant who seeks to have the trial court inquire into the prosecutor's use of peremptory challenges based upon alleged exclusion of blacks, such exclusion will be insufficient, in and of itself, to warrant reversal of a trial court's determination not to make inquiry." (*People v. Thompson* (App. Div. 1981), 435 N.Y.S.2d 739, 755.)

In *Williams v. State* (Tex. App. 1986), 712 S.W. 2d 835, the court stated:

> "In *Batson*, the state struck all four Blacks from the panel. It is obvious from the majority's opinion that there

is no quantitative formula with which to gauge peremptory challenges of minority panel members. Such determinations should be based on all the relevant circumstances in the particular case. The Court in *Batson* places wide discretion in trial judges to make these determinations, but requires that they undertake ' "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." ' 476 U.S. at 93, 106 S. Ct. at 1721 (quoting *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266, 97 S. Ct. 555, 564, 50 L. Ed. 2d 450 (1977))." *Williams v. State* (Tex. App. 1986), 712 S.W. 2d 835, 841.

See also *State v. Neil* (Fla. 1984), 547 So. 2d 481, 487.

To avoid the drawing of arbitrary lines by this court based on a record made on rules not now applicable, these cases should be remanded to the trial court to make a determination not only from the number of blacks excluded but from all the circumstances of the case, whether or not a *prima facie* showing of discriminatory exclusion of blacks has been established. Then, if the defendant does make such a showing, either from the record as originally established or by that record plus any additional relevant evidence, the trial court must make the further determination whether the State has a racially neutral explanation for the challenges.

I do not understand the statement in the dissent that the recital of hypothetical situations in this concurrence does not clarify the court's stance in this sensitive issue. On the contrary, I feel these hypothetical situations emphasize the necessity of this court's holding that all cases on review in which the *Batson* issue is viable should be remanded to the trial court for a two-stage hearing, wherein the defendant will have the opportunity to make a *prima facie* showing of discriminatory use of peremptory challenges. After such a showing has been made, the prosecutor may then offer racially neutral explanations for the use of the challenges. I cannot understand

why my dissenting colleagues want to deprive the defendant of that right. If we decide the *prima facie* question in this court, then the defendant is being deprived of the right to present evidence that is relevant under *Batson*. I cannot agree with my dissenting colleagues that "the evidence relevant to this question is already before us." (Simon, J., dissenting at 259.) A more accurate statement would be that some of the evidence relevant to this question *may* be before us. Sending the case back to the trial court is not a matter of passing "the buck to the trial judges." (Simon, J., dissenting at 259.) It is simply a matter of affording an opportunity for the trial court to make a determination from all of the relevant facts and circumstances that the defendant may wish to offer in order to establish that a *prima facie* showing has been made.

I am not certain as to what result my dissenting colleagues are now contending for. The Chief Justice clearly contends that this court should decide the *prima facie* question from the record before us. Justice Simon appears to agree with that contention. However, he then states, "if we feel that the evidence in a particular proceeding is insufficient to establish a *prima facie* case or that the defendant was unfairly precluded from making a record, we might deem it appropriate to give that defendant an opportunity to present additional facts." (Simon, J., dissenting at 259.) This does not even say that we are going to remand all cases in which we find that the record discloses no *prima facie* showing, but intimates that we may remand some cases in which no *prima facie* showing has been made, but not all. It appears he would have us pick and choose, deciding on an *ad hoc* basis whether the *prima facie* showing question should be decided in this court or by the trial court.

All of these objections to remanding these cases to the trial court strikes me as "much ado about nothing."

Even if we were to decide in this court the *prima facie* showing question and find that the record discloses a *prima facie* case of discrimination, the case must still be remanded to the trial court for a hearing, at which the prosecutor would have an opportunity to offer racially neutral explanations for the use of the peremptory challenges. Following the procedure which the majority uses in the supervisory order is not going to substantially alter the nature of the trial court proceedings or appreciably lengthen the hearing. On the other hand, if we decide from the record before us that the defendant has not made the requisite *prima facie* showing, it is the defendant who will be hurt. As I have discussed herein, he will have been unfairly deprived of the right to make a showing under *Batson* law. This denial, in itself, may pose some constitutional problems. However, it now appears from Justice Simon's dissent that he would remand some, but not all, cases in which we determine from the record that a *prima facie* showing has not been made. Therefore, whether we proceed under the majority supervisory order or under the theory of the dissent, almost all of these cases will be remanded to the trial court for a hearing on one or both issues. Thus, "much ado about nothing."

Justice Simon's dissent seems to concentrate on the horribles of People v. McDonald, which I have acknowledged herein. He does not say, however, in playing the numbers game, at what point below 16 peremptory challenges this court should arbitrarily say, solely from the number of peremptory challenges used, that the court finds that a *prima facie* showing discrimination has or has not been made. I cannot understand the meaning of or the reason for the highly charged statement in the dissent that "our act of remanding this issue does nothing to show our determination to stamp out the grotesque misuse of peremptory challenges." (Simon, J., dis-

senting at 261.) In remanding McDonald we are doing exactly that which the Supreme Court did in *Batson* and we are handling McDonald in the same manner as all other cases involving this question are being handled by this court. The procedure does not disadvantage the defendant in People v. McDonald any more than the procedure disadvantaged the defendant in *Batson*. I think that our supervisory order shows "our determination to stamp out the grotesque misuse of peremptory challenges" in exactly the same manner that *Batson* showed the Supreme Court's determination to do so. If it is important that such a determination be shown, I would think it important that the showing be made by the Supreme Court of the United States.

In cases that are tried after the *Batson* decision, the trial court must indulge in this two-step determination of the issues. Courts of review will then have the opportunity to determine the correctness of the trial court's holdings from a record made under *Batson* guidelines. For sake of uniformity, indeed for sake of fairness to those defendants who were tried before *Batson*, the trial court in such cases should also make the determination whether a *prima facie* case of discrimination has been made under *Batson* rules.

Chief Justice Clark's dissent acknowledges that the Supreme Court, in *Batson*, remanded the case to the trial court for a determination of whether a *prima facie* showing of discrimination can be established. I cannot accept the Chief Justice's explanation for the need for a different procedure in our cases. His dissent notes that in *Batson* the record and presentation to the court had been made in support of a sixth amendment argument. The Supreme Court, instead, decided the case on fourteenth amendment grounds and remanded the case to the trial court for its determination of the fourteenth amendment question in light of the *Batson* decision. I

would think the same rationale would apply in our case. As noted previously, the record in this case was made under the guidelines of *Swain*. The guidelines established in *Batson* for making a *prima facie* showing of discriminatory use of peremptory challenges are entirely different than those required in *Swain*. I am not prepared to say what differences in proof these different guidelines may dictate. I am also not willing to arbitrarily preclude a defendant from making whatever additional showing he feels he can make under *Batson* to bolster his *prima facie* showing of racially discriminatory exercise of peremptory challenges.

The procedure outlined in the supervisory order is in keeping not only with that used by the Supreme Court in *Batson*, but also with that followed by a substantial number, though not all, of the courts in other jurisdictions. For example, see *Jackson v. State* (Ala. Dec. 19, 1986), No. 84—1112, slip op.; *Smith v. State* (Ala. App. Feb. 10, 1987), No. 6, Div. 5, slip op.; *State v. Antwine* (Mo. March 17, 1987), No. 67720, slip op.; *State v. Payton* (Mo. App. March 17, 1987), No. 51542, slip op.; *Saadiq v. State* (Iowa 1986), 387 N.W. 2d 315; *People v. Hockett* (1986), 121 A.D. 2d 878, 503 N.Y.S.2d 995; *United States. v. Allen* (4th Cir. 1987), 814 F.2d 977; *United States v. David* (11th Cir. 1986), 803 F.2d 1567; and *Fleming v. Kemp* (11th Cir. 1986), 794 F.2d 1478. Our appellate court held similarly in *People v. Johnson* (1986), 148 Ill. App. 3d 163, and *People v. Cannon* (1986), 150 Ill. App. 3d 1009.

Lastly, Justice Simon's dissent expresses concern over this court's delay in resolving the *Batson* question in the cases before us. The supervisory order in this case was approved by a majority of this court during its March term and would have been entered no later than March 26, 1987, were it not for the time consumed in finalizing and responding to the language of the dissents.

Now, some four weeks later, the supervisory order remanding these cases to the trial courts still has not been entered. The delay cannot be attributed to the manner of handling the *Batson* issue set forth in the supervisory order.

WARD and MORAN, JJ., join in this special concurrence.

CHIEF JUSTICE CLARK, dissenting:

I respectfully dissent. The majority's decision to remand these cases by supervisory order, and without a finding as to whether the defendants have made out a *prima facie* case under *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, is both bad policy and bad law. It serves neither the public interest in speedy adjudication of appellate cases, nor the judicial interest in their economical and expeditious resolution. It also represents an abdication of our solemn responsibility, as the highest appellate court in Illinois, to provide our trial courts with needed guidance—to tell them what the law is.

I deal first with the majority's apparent decision to evade the question of whether the defendants below made out a *prima facie* case of discriminatory use of peremptory challenges under *Batson*. Whether, under *Batson*, the facts and circumstances involved in the use of peremptory challenges raise an inference that the exclusion of veniremen was racially motivated was an issue raised, argued, and fully briefed to this court in all of these cases. While *Batson* was not decided until after the defendants were convicted, the decision was announced while the direct appeals were pending, and the parties took the opportunity to argue the existence of a *prima facie Batson* case either in their initial briefs, in their supplemental briefs, and/or in oral argument. Given

this history, I frankly do not understand what purpose is served by having these cases remanded to the trial court for a hearing on whether there was a *prima facie* case, after which the parties will presumably have to rehash and rebrief this same issue.

The resulting delay and waste of resources would only be justifiable if, at a hearing on a *prima facie Batson* case, the trial court was actually in a position to develop evidence or information which would aid in our later review. In fact, however, the trial court will be confronted with the same cold record which now confronts us. The crucial facts and circumstances involved in the use of the peremptory challenges are the race of the veniremen peremptorily challenged by the prosecutor, the total number of challenges he uses, and the characteristics of the veniremen challenged, as revealed by the record of their answers during the *voir dire*. All of these facts and circumstances are currently available to us.

The only possible source of information which the trial court might have, and which we do not, would be derived from the trial court's memory of the demeanor of the individual veniremen challenged. I do not believe this source justifies the scope of the majority's remand, for three reasons. First, the advanced age of these cases makes it extremely unlikely that the trial judges involved will actually be able to recall the demeanor of individual veniremen and make reliable judgments on that basis. Second, I do not believe that the demeanor of a venireman is the kind of factor which should form part of the defendant's *prima facie* case. The defendant is not really in a position to prove that a venireman's demeanor did *not* justify the prosecutor's use of his peremptory challenges. The prosecutor will be in a much better position, if he so wishes, to use a venireman's demeanor as part of his neutral explanation for peremptorily challenging a venireman. Third, even this use of demeanor evidence

must be viewed with extreme caution, since it may be all too easy for a prosecutor to use it as a subterfuge for peremptorily challenging a venireman on the basis of race.

Moreover, by evading the issue of whether a prima facie case has been made out, the majority has put the onus on the trial courts to make the first, crucial determinations of this issue. Having access only to a mass of contradictory precedent from other jurisdictions, and lacking authoritative guidance from this court, they may well reach inconsistent conclusions. In cases where the trial court erroneously finds that the defendant has not made out a *prima facie* case, we may eventually be required to order a second remand. If the trial court later erroneously accepts or rejects the prosecutor's explanation, we may be required to reverse yet again. A single issue, which might have been briefed and argued once, will have been briefed and argued thrice. As a reviewing court, we cannot postpone indefinitely our responsibility to tell our trial courts what the law is. There is no need, in these cases, to postpone it at all.

Nor do I believe that the particular way in which the United States Supreme Court structured its decision in *Batson* should be determinative. While the court remanded *Batson* to the trial court for a determination of whether there was a *prima facie* case, the scope of its remand need not determine ours. In *Batson*, the Court overruled *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, which effectively precluded defendants from proving any case of racially motivated use of peremptory challenges violative of the equal protection clause of the fourteenth amendment. The defendant in *Batson*, however, had relied instead on the sixth amendment. (476 U.S. 79, 108-10, 90 L. Ed. 2d 69, 95-97, 106 S. Ct. 1712, 1729-30 (Stevens, J., dissenting).) Thus, the Court in *Batson* was not given the benefit of

briefing or argument as to whether the facts and circumstances presented supported a *prima facie* case of racially motivated exclusion. While the court might have ordered reargument and rebriefing on the fourteenth amendment question, as suggested by Chief Justice Burger and Justice Rehnquist (476 U.S. 79, 115-17, 90 L. Ed. 2d 69, 99-101, 106 S. Ct. 1712, 1732-33 (Burger, J., dissenting)), it instead decided to remand to the trial court for the initial determination of a *prima facie* case.

Our situation is entirely different. Nearly a year has passed since *Batson*. The parties in these cases have extensively briefed and argued the question of a *prima facie* case. There is now a considerable body of persuasive precedent on this question from other jurisdictions to guide us. Under these circumstances, a remand to the trial court, at least in situations where it appears that the trial court will not be able to discover any facts other than those already in the record, is pointless. And while I have "confidence that trial judges, experienced in supervising *voir dire*, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a *prima facie* case of discrimination against black jurors" (476 U.S. 79, 97, 90 L. Ed. 2d 69, 88, 106 S. Ct. 1712, 1723), I am not equally confident that they will be able to so decide without any guidance at all from the appellate courts.

Therefore, assuming that a *prima facie* case has been made out in any of these cases, we should remand only to give the prosecutors involved an opportunity to establish a neutral explanation. A remand for this purpose would not be a waste of limited judicial resources, for two reasons. First, since the trials in these cases took place prior to *Batson*, and the trial courts never ruled that the defendants had made out *prima facie* cases, the prosecutors were not put on notice that a neutral explanation for their challenges was required. Second, the

prosecutor's proof of a neutral explanation will depend partly upon his credibility and demeanor, matters which the trial court will be in a better position to determine. Thus, the proper course in these cases would be either to determine that there is no *prima facie* case, and thus no need for a remand, or that there is a *prima facie* case, and thus a remand for proof of a neutral explanation is required.

Even were I to agree with the scope of the majority's remand, I would still not agree with the majority's decision to remand by supervisory order. Some of these cases contain other issues, some of which are likely to arise on retrial, as well as others which must be considered even if the *Batson* claim should fail. To delay decision on these other issues, particularly in capital cases, serves no useful purpose whatsoever.

For these reasons, I dissent.

JUSTICE SIMON joins in this dissent.

JUSTICE SIMON, also dissenting:

Chief Justice Clark's thoughtful analysis clearly demonstrates the error in remanding these cases to the circuit court for determination of whether a *prima facie* showing of racial discrimination has been made. If *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, is to have any real impact on the administration of justice, prosecutors and the public must understand that State courts will no longer tolerate the exclusion of black jurors because of their race. What is called for here is a clear signal of the vigor and determination with which the Supreme Court's mandate will be executed. The concurring opinion endorses these goals, but I believe that, despite my colleagues' good intentions, the procedure adopted by the court falls short of conveying the needed message. This is particularly true

in light of the court's previous characterization of claims of systematic racially discriminatory jury selection as "emotional arguments." (*People v. Mack* (1985), 105 Ill. 2d 103, 122, *vacated* (1987), 479 U.S. 1074, 94 L. Ed. 2d 127, 107 S. Ct. 1266.) The ruminations in the concurring opinion on various hypothetical situations in which a *prima facie* case might not exist do not, in my view, clarify the court's stance.

The concurring opinion also suggests that the only way to treat these defendants fairly is to pass the buck to trial judges on the question of whether *prima facie* cases have been established. Chief Justice Clark convincingly shows that no such procedure is necessary or appropriate: the evidence relevant to this question is already before us. That the standards for judging such evidence have changed does not render the evidence itself suspect.

Of course, if we feel that the evidence in a particular proceeding is insufficient to establish a *prima facie* case or that the defendant was unfairly precluded from making a record, we might deem it appropriate to give that defendant an opportunity to present additional facts. But I do not think that we "become involved in a numbers game" (Ryan, J., specially concurring at 247) by speaking out decisively in cases in which a *prima facie* showing has clearly been made.

People v. McDonald, Nos. 63204, 63240 cons., most plainly illustrates that the court's refusal to make any pronouncement guiding the circuit or appellate courts on the question of what constitutes a *prima facie* case is unduly timid. In that case three black defendants were charged with the aggravated kidnapping and rape of a white woman. At the defendants' first trial, which ended in a mistrial, the prosecutor peremptorily challenged all eight black prospective jurors, and at the second trial the same prosecutor excluded all 16 eligible black jurors

called (one other black venireman was excused for cause). Such a" 'pattern' of strikes" (*Batson v. Kentucky* (1986), 476 U.S. 79, 97, 90 L. Ed. 2d 69, 88, 106 S. Ct. 1712, 1723) in those circumstances, at an absolute minimum, makes out a *prima facie* case of racial discrimination. Nothing in law or reason supports the majority's silence on this question here. In both *People v. Cannon* (1987), 153 Ill. App. 3d 245, and *People v. Seals* (1987), 153 Ill. App. 3d 417, our appellate court adopted a better procedure—finding *prima facie* cases and remanding for a hearing on the prosecutor's explanations.

The concurring opinion questions whether in some circumstances even the exclusion of 16 black jurors would necessarily constitute a *prima facie* case in light of other relevant facts. I can conceive of few, if any, circumstances in which exclusion of 16 black jurors would not call for an explanation by the prosecutors. A contrary suggestion exaggerates the difficulty of establishing a *prima facie* case. In discussing the proper evidentiary burdens, *Batson* borrowed extensively from the title VII discrimination context where the Court has made clear that "[t]he burden of establishing a prima facie case of disparate treatment is not onerous" (*Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 253, 67 L. Ed. 2d 207, 215, 101 S. Ct. 1089, 1094). See *Batson v. Kentucky* (1986), 476 U.S. 79, 94-98, 90 L. Ed. 2d 69, 86-89, 106 S. Ct. 1712, 1721-24.

But even if it is true that no *prima facie* case would be established if five black jurors were actually accepted by the prosecution, we need not engage in such guessing games here. In the McDonald case, not five, three, or even one black juror was seated—over two trials all 24 eligible black persons were peremptorily challenged. Fairness to the defendants does not require that we unnecessarily refuse to rule in their favor. While the concurring opinion is correct that the trial judge in People

v. McDonald will not have to struggle very hard over the question whether a *prima facie* case exists, our act of remanding this issue does nothing to show our determination to stamp out the grotesque misuse of peremptory challenges.

The Chief Justice also correctly criticizes the court's unexplained action in remanding by supervisory order for a *Batson* hearing but leaving in limbo other issues raised by the defendants' appeals. We should instead follow the lead of our appellate court, which has filed opinions in several cases remanding for a *Batson* hearing but at the same time passing on the other claims raised. See *People v. Seals* (1987), 153 Ill. App. 3d 417; *People v. Cannon* (1986), 150 Ill. App. 3d 1009; *People v. Johnson* (1986), 148 Ill. App. 3d 163; see also *Saadiq v. State* (Iowa 1986), 387 N.W.2d 315.

Several of the defendants affected by today's supervisory orders are under sentences of death. If these sentences are eventually to be vacated, there can be no justification for not telling the defendants at the earliest possible time. If not, they again have a right to know. Members of this court have frequently criticized counsel in death penalty cases for taking too long to brief those cases, and we should not compound the problem by dilatory actions of our own. Notwithstanding the instruction to trial judges that the result of their efforts be reported back to us within 63 days, we cannot ignore the delays attendant upon proceedings in busy courts such as we have in many circuits in Illinois. Legal matters have a way of dragging on, and I am not at all confident that these hearings will be completed in the time indicated. As a matter of fact, it has already taken this court better than 90 days since the Supreme Court's ruling that *Batson* was to be applied retroactively (see *Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708) to settle on this course of action.

People v. Hope, No. 58037, presents the most compelling circumstances for deciding the merits of the other issues on appeal now. Hope's appeal was first argued in this court in May 1985, almost two years ago. On February 21, 1986, the court filed an opinion upholding Hope's conviction and death sentence, with three justices dissenting on the death sentence only. Thereafter, one of the justices in the original majority joined the three dissenters in voting for rehearing of the death sentence issue, and reargument was heard on May 14, 1986. If a majority of this court now favors vacating Hope's sentence and remanding for a new capital hearing, we should rule swiftly and not prolong uncertainty over the death sentence.

Quite apart from these considerations, the procedure prescribed here has little to commend it because it is likely to result in a waste of judicial resources. Several cases affected by these orders have already been extensively briefed, and the most recent of these was argued in September 1986. Any additional effort now involved in rendering a decision should not be sufficient to deter us from ruling on issues ripe for resolution.

If the trial court on remand of any of these cases holds that no new trial is warranted under *Batson*, we will then have to tackle the very issues avoided today. The passage of time may require the members of this court to reacquaint themselves with the record, and interim legal developments could mean that new briefing and argument would be needed, thus clearly wasting judicial resources.

CHIEF JUSTICE CLARK joins in this dissent.